1

2

3

4

5

6

7

8

UNITED STATES DISTRICT COURT

9

EASTERN DISTRICT OF CALIFORNIA

10

11

UNITED STATES OF AMERICA, and
STATE OF CALIFORNIA, ex rel.

12

BRENT BAILEY and EMILY WADE,

No.  2:12-cv-00106-MCE-CKD

13

Relators,

**MEMORANDUM AND ORDER**

14

v.

15

GATAN, INC., ROPER INDUSTRIES,
INC. and DOES 1 through 100,

16

Inclusive,

17

Defendants.

18

19

Through the present action, Relators Brent Bailey ("Bailey") and Emily Wade

20

("Wade") (collectively "Relators")[1] sue Gatan, Inc. ("Gatan") and its parent corporation

21

Roper Industries ("Roper") (collectively "Defendants") under the False Claims Act, 31

22

U.S.C. § 3729, et seq. ("FCA") and its California counterpart, Government Code § 3729,

23

et seq. ("CFCA").  This lawsuit was originally filed under seal on January 13, 2012,

24

pursuant to the qui tam provisions of the FCA.  The United States of America ("United

25

States") and the State of California ("California") declined to intervene in the action, and

26

therefore this Court unsealed the complaint.  ECF No. 11, 12.

27

_____

28

[1] On March 29, 2013, the unidentified Relator "Richard Roe" was voluntarily dismissed.  ECF
No. 15.

1    Relators allege seven claims against Defendants under both the FCA and CFCA.

2    Compl., ECF No. 1, at ¶¶ 71-91.  The claims can be summarized as follows: (1) that

3    Gatan knowingly presented, or caused to be presented, a false or fraudulent claim (first

4    and fourth claims); (2) that Gatan knowingly made, used, or caused to be made or used,

5    a false record or statement material to a false or fraudulent claim (second and fifth

6    claims); (3) that Gatan conspired to defraud the United States and the State of California

7    by getting a false or fraudulent claim allowed or paid (third and sixth claims); and (4) that

8    Gatan failed to disclose false claim within reasonable time (seventh claim).  Id.

9    Presently before the Court is Defendants' Motion for Judgment on the Pleadings

10   pursuant to Federal Rule of Civil Procedure 12(c), which alternatively seeks to strike

11   certain allegations.  ECF No. 56.   Relators filed a timely opposition to both requests

12   contained in Defendants' motion.[2]  ECF No. 61.  For the reasons stated below,

13   Defendants' motion is DENIED in part and GRANTED in part.[3]

14

15                              **BACKGROUND**

16

17   Relators are former employees of Gatan, which is a wholly-owned subsidiary of

18   Roper.  Compl. at ¶¶ 8-9, 11.  Gatan is a leading manufacturer of instrumentation and

19   software that enhance the performance of electron microscopes.  Id. at ¶ 20.  Relators

20   allege that Defendants made false or fraudulent claims in the sale of equipment and

21   accessories that cause potentially unsafe and hazardous X-ray radiation leaks.  Id. at ¶

22   1.  Specifically, Relators claim that Gatan fails to advise its customers that the allegedly

23   defective products put them at risk of being exposed to radiation in excess of the limits

24   proscribed by the Nuclear Regulatory Commission ("NRC") and the Federal Drug

25   Administration ("FDA").  Id. at ¶ 3-4.  Relators also allege that Gatan falsely claims to all

26

27   [2]   Because oral argument would not be of material assistance, the Court ordered this matter submitted on the briefing.  E.D. Cal. Local Rule 230(g).

28   [3] Because Relators consent to dismissal, without prejudice, of their respective FCA and CFCA conspiracy causes of action, Relators third and sixth claims are DISMISSED without prejudice.

1  its employees and customers that its products are exempt from compliance with FDA

2  regulations.  Id. at ¶ 3.  Additionally, Relators aver that, as a result of Gatan's

3  concealment and misrepresentations, its customers fail to classify their employees as

4  radiation workers despite the radiation risks associated with the equipment. Id. at ¶ 5.

5  Finally, Relators allege that Gatan regularly failed to test the radiation emissions of their

6  products before shipping to its customers.  Id. at ¶ 45.  Relators contend that the

7  adversely-affected customers include the United States, California, and entities that

8  receive funding from the United States and California.  Id. at ¶ 50.  Consequently,

9  Relators argue that these allegations show that Defendants knowingly made false and

10  misleading claims to its customers, in violation of the FCA and CFCA.

11  Relators brought this action on January 13, 2012, alleging seven claims under

12  both the FCA and CFCA.  Compl. at ¶¶ 71-91.  Relators further claim that Roper is liable

13  for Gatan's conduct because "[i]n California, a parent corporation is fully liable for the

14  acts of its wholly owned subsidiary."  ECF No. at ¶ 12.  Defendants bring the instant

15  motion seeking judgment on the pleadings.  As indicated above, Defendants

16  alternatively move to strike several allegations in Relators' Complaint.  ECF No. 56.[4]

17

18  **STANDARD**

19

20  Under Federal Rule of Civil Procedure 12(c),[5] "a party may move for judgment on

21  the pleadings" after the pleadings are closed "but early enough not to delay trial."  A

22  motion for judgment on the pleadings pursuant to Rule 12(c) challenges the legal

23  sufficiency of the opposing party's pleadings.  See, e.g., Westlands Water Dist. v.

24  Bureau of Reclamation, 805 F. Supp. 1503, 1506 (E.D.Cal. 1992).  Any party may move

25  _____

26  [4] Defendants' Motion to Strike is denied pursuant to Rule 12(f), which requires that a motion to strike be made before the filing of a responsive pleading.  Because Defendants filed their Answer (ECF No. 24) before filing the present motion (ECF No. 56), the Motion to Strike is therefore DENIED.

27

28  [5] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

1  for judgment on the pleadings under Rule 12(c) after the pleadings are closed but within
2  such time as to not delay trial.

3         The standard for evaluating a motion for judgment on the pleadings is essentially
4  the same as the standard applied to a Rule 12(b)(6) motion.  Dworkin v. Hustler
5  Magazine, Inc., 867 F.2d 1188, 1192 (9th Cir. 1989).  A motion for judgment on the
6  pleadings should only be granted if "the moving party clearly establishes on the face of
7  the pleadings that no material issue of fact remains to be resolved and that it is entitled
8  to judgment as a matter of law."  Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.,
9  896 F.2d 1542, 1550 (9th Cir. 1989) (internal citation omitted). Judgment on the
10  pleadings is also proper when there is either a "lack of cognizable legal theory" or the
11  "absence of sufficient facts alleged under a cognizable legal theory."  Balistreri v.
12  Pacifica Police Dept., 901 F.2d 696, 699 (9th Cir. 1988).  In reviewing a Rule 12(c)
13  motion, "all factual allegations in the complaint [must be accepted] as true and
14  construe[d] . . . in the light most favorable to the non-moving party."  Fleming v. Pickard,
15  581 F.3d 922, 925 (9th Cir. 2009).  Judgment on the pleadings under Rule 12(c) is
16  warranted "only if it is clear that no relief could be granted under any set of facts that
17  could be proved consistent with the allegations."  Deveraturda v. Globe Aviation Sec.
18  Servs., 454 F.3d 1043, 1046 (9th Cir. 2006) (internal citations and quotation marks
19  omitted).

20         Courts have discretion to grant leave to amend in conjunction with motions
21  made pursuant to Rule 12(c).  Lonberg v. City of Riverside, 300 F. Supp. 2d 942, 945
22  (C.D. Cal. 2004) (citation omitted).  Generally, leave to amend a complaint is denied only
23  if it is clear that the deficiencies of the complaint cannot be cured by amendment.
24  DeSoto v. Yellow Freight Sys., Inc., 957 F.2d 655, 658 (9th Cir. 1992).
25  ///
26  ///
27  ///
28  **ANALYSIS**
4

1

2      Defendants claim that Relators have failed to allege FCA liability with particularity,

3 failed to allege a false claim under an "implied false certification" theory, and failed to

4 describe any false record or statement.  ECF No. 57 at 6-15.  Also, Defendants contend

5 that Relators have not established a basis for holding Roper liable for its parent

6 company Gatan's alleged wrongdoing.  Id. at 15-16.  For the reasons set forth below, the

7 Court disagrees in part and agrees in part.

8      **A.      False Claims Act Liability under State and Federal Law**

9 Relators' First, Second, Fourth, Fifth, and Seventh claims allege violations of the FCA,

10 31 U.S.C. § 3729(a)(1)(AB), and the California False Claims Act ("CFCA"), Cal. Gov.

11 Code § 12650 et seq.  The FCA sections pled by Relators attach liability to any person

12 who:  "(A) knowingly presents, or causes to be presented a false or fraudulent claim for

13 payment or approval; [or] (B) knowingly makes, uses, or causes to be made or used, a

14 false record or statement material to a false or fraudulent claim."  31 U.S.C. § 3729(a)(1)

15 (A–B).

16      Courts rely on FCA precedent to interpret the CFCA.  See San Francisco Unified

17 Sch. Dist. ex rel. Contreras v. Laidlaw Transit, Inc., 224 Cal.App.4th 627, 637 (2014);

18 State v. Altus Fin., S.A., 36 Cal.4th 1284, 1299, (2005) ( "[T]he CFCA 'is patterned on

19 similar federal legislation' and it is appropriate to look to precedent construing the

20 equivalent federal FCA") (internal citations and quotation marks omitted).  FCA cases

21 are authoritative in construing the CFCA to the extent the language of the two acts are

22 similar.  See Fassberg Const. Co. v. Hous. Authority of Los Angeles, 152 Cal. App. 4th

23 720, 735 (2007).  The language in the sections of the FCA and CFCA supporting the

24 ///

25 ///

26 ///

27 ///

28

1  false certification and reporting claims are nearly identical.[6]  As such, the Court will

2  address the FCA claims here and apply the same analysis to the CFCA claims.

3  ### 1. Implied False Certification Theory

4  Relators proceed under an implied false certification theory.  Implied certification

5  is based on the notion that claims for payment submitted to the government represent an

6  implied certification of a defendant's continuing adherence to program requirements.

7  Ebeid ex rel. U.S. v. Lungwitz, 616 F.3d 993, 996–97 (9th Cir. 2010).  An entity is thus

8  liable for previously undertaking to expressly comply with a law, rule, or regulation, even

9  though a certification of compliance with that law, rule, or regulation is not actually

10 required in submitting each individual claim for payment.  Id. at 998.  The defendant's

11 noncompliance renders the claims "false," and liability attaches under the FCA.

12 Therefore, an entity can be liable for false certification even if it does not expressly certify

13 compliance in seeking a claim for payment.

14 To satisfy the pleading requirements applicable to fraud claims under Rule 9(b), a

15 complaint alleging implied false certification must also satisfy the general elements of

16 FCA liability.   Ebeid, 616 F.3d at 998.  Additionally, the complaint must plead with

17 particularity allegations that provide a reasonable basis to infer that "(1) the defendant

18 explicitly undertook to comply with a law, rule, or regulation that is implicated in

19 submitting a claim for payment and that (2) claims were submitted (3) even though the

20 defendant was not in compliance with that law, rule, or regulation."  Id.

21 Here, Relators allege various false certifications by Defendants under an implied

22 false certification theory.  First, Relators claim that Gatan shipped and sold electron

23 microscope parts to several federal and state government entities and falsely certified

24  [6] The federal False Claims Act makes liable any person who (A) knowingly presents, or causes to
25  be presented, a false or fraudulent claim for payment or approval; and (B) knowingly makes, uses, or
   causes to be made or used, a false record or statement material to a false or fraudulent claim.  31 U.S.C.
26  § 3729(a)(1)(A)-(B).

27  The California False Claims Act makes liable any person who (1) knowingly presents or causes to
   be presented a false or fraudulent claim for payment or approval; (2) knowingly makes, uses, or causes to
   be made or used a false record or statement material to a false or fraudulent claim; and (3) conspires to
28  commit a violation of the subdivision  Cal. Gov't Code § 12651(a)(1)-(3)..

1   that the products complied with the radiation emission specifications of state and federal

2   regulatory agencies, including the NRC.  See Compl. at ¶¶ 1, 47, 50.  As to the sale of

3   products to federal government agencies, Relators claim that Defendants undertook an

4   obligation to expressly comply with the rules set forth in the Federal Acquisition

5   Regulation ("FAR"), which applies to government acquisitions of goods and services.  Id.

6   at ¶ 3.  Further, Relators allege that Gatan asserts compliance with all applicable

7   regulations by giving its customers declarations or marks of conformity (in sales

8   contracts and brochures) that state its products meet European "CE standards."  Id. at

9   ¶¶ 2, 57.  Relators contend that the CE certification is viewed in the industry as a "quality

10  mark" that is equal to or better than the Underwriters Laboratories ("UL") certification

11  used in the United States.  Id. at ¶ 2.  It follows, Relators contend, that Defendants are

12  implicitly certifying compliance with the American standards for X-ray radiation emissions

13  by including these declarations of conformity, even though their products actually emit

14  radiation at levels in excess of regulatory limits.  Id. at ¶¶ 2, 44.

15          Additionally, from Relators' account, Gatan has falsely claimed, and continues to

16  claim, that it is exempt from Title 21 regulations that set standards for certain radiation-

17  emitting electronic products under the oversight of the FDA.  Id. ¶ 36.  Relator contends

18  that by claiming that it is exempt from the FDA regulations, Gatan is essentially falsely

19  certifying that it was in compliance with applicable federal regulations.

20          Based on Relators' allegations, Defendants expressly affirmed compliance with

21  state and federal regulations, and then later implied compliance through

22  misrepresentations of the safety of its products.  As such, these claims are appropriately

23  construed as violations of the FCA under the theory of implied certification.

24                    **2. Sufficient Pleading of the FCA Elements under Rule 9(b)**

25          Defendants go on to contend that, even if Relators' allegations are sufficient

26  under a false certification theory, they still fail to meet the particularity standards of Rule

27  9(b).  The Court disagrees.  Relators have alleged the elements of an FCA claim with

28  sufficient particularity.

7

1    Federal Rule of Civil Procedure 9(b) provides that a party must plead fraud with

2 particularity.  With respect to the FCA, Relators must give "particular details of a scheme

3 to submit false claims paired with reliable indicia that lead to a strong inference that

4 claims were actually submitted." Ebeid, 616 F.3d at 998-99 (citation and internal

5 quotation marks omitted).  Relators are required to "provide enough detail to give

6 [defendants] notice of the particular misconduct which is alleged to constitute the fraud

7 charged so that [they] can defend against the charge and not just deny that [they have]

8 done anything wrong." Id. at 999 (internal quotation marks omitted).  Specifically, the

9 particularity requirement requires that Relators "state with particularity the circumstances

10 constituting fraud or mistake, including the who, what, when, where and how of the

11 misconduct" and "what is false or misleading about a statement, and why it is false." Id.

12 at 998 (internal quotation marks omitted) (citing Vess v. Ciba–Geigy Corp. USA, 317

13 F.3d 1097, 1106 (9th Cir.2003)).  However, Relators do not need to "identify

14 representative examples of false claims to support every allegation." Id.  Accordingly,

15 Relators meet their burden if they provide (1) sufficient specificity of the circumstances of

16 the fraudulent claims and (2) "reasonable indicia" that those claims were actually made.

17 Id. at 998-99.

18    In particular, to comply with Rule 9(b), Relators must give sufficient detail of the

19 essential elements of an FCA claim: "(1) a false statement or fraudulent course of

20 conduct, (2) made with scienter, (3) that was material, causing (4) the government to pay

21 out money or forfeit moneys due." U.S. ex rel. Hendow v. Univ. of Phoenix, 461 F.3d

22 1166, 1174 (9th Cir. 2006).  The false statement or course of conduct must be material

23 to the government's decision to pay out money to the claimant. Id. at 1172.  Similarly, a

24 claim predicated on § 3729(a)(1)(B) requires a showing that the "defendants knowingly

25 made, used, or caused to be made or used, a false record or statement material to a

26 false or fraudulent claim." Id.  Since the prerequisites for liability under both sections are

27 virtually identical, with the only difference being whether Defendants submitted a false

28 ///

8

1  claim or made a statement material to such a claim, the Court addresses the two causes
2  of action together below.

3        First, Relators specifies with particularity numerous false statements by
4  Defendants.  As discussed above, Relators claim that Defendants told its customers
5  that, with respect to radiation emission levels, its products complied with state and
6  federal regulations, were exempt from FDA regulations, and complied with certain
7  European standards that mimicked American regulations.  In doing so, Defendants
8  allegedly made false statements regarding the safety of its products and its compliance
9  with applicable laws, rules, and regulations.  To support its assertions, Relators provide
10  specific details surrounding the alleged false claims: the time period over which the false
11  claims were made (at least 10 years) (Compl. at ¶ 46); an indication of the employees
12  who were involved in the alleged false claims (including Gatan's president in 2009, Ben
13  Wood, and manager Paul Green in 2011) (Id. at ¶¶ 41-43); and examples of the
14  language of the false statements. Id. at ¶¶ 2-3.  Additionally, Relators include a list of
15  several pieces of equipment that contain the allegedly defective Gatan parts, including
16  their geographic location, the purchasers, and the time of purchase.  Id. at ¶¶ 63-66.

17        Next, FCA claims require that an individual act "knowingly" in presenting, causing
18  to be presented a false claim, or making, using, or causing to be used a false record or
19  statement. 31 U.S.C. § 3729(a)(1)(A–B).  Scienter requires knowledge of the falsity with
20  the intent to deceive.  U.S. ex rel. Hopper v. Anton, 91 F.3d 1261, 1265.  Specifically, the
21  FCA requires actual knowledge of the information and either an act in deliberate
22  ignorance or in reckless disregard of the truth or falsity of the information.  31 U.S.C.
23  § 3729(b)(1) (A) (i-iii).  Relators' complaint gives ample examples of how Defendants
24  acted with knowledge.

25        For example, Relators assert that Gatan is "aware, and has been aware of the
26  fact that its products are defective and leaking X-ray radiation, yet it has embarked upon
27  an intentional course of conduct designed to conceal the defective nature of its products
28  from its customers."  Compl. at ¶ 7.  In their complaint, Relators give specific examples

9

1   to support their assertion that Gatan was aware of its noncompliance with radiation

2   emission requirements when it made false statements to its customers.  Id. at ¶ 41-43.

3   Relators cite at least three instances, between 2008 and 2011, where employees

4   relayed concerns to Gatan staff about the high radiation emission levels in Gatan's

5   products.  Id.  In each instance, Relators allege that Gatan then performed a sham

6   "independent investigation" of the emission levels and subsequently fired the employees

7   that raised the safety concerns.  Id.  Also, Relators claim that in 2011 Gatan was notified

8   of an X-radiation leak in its ChromaCL product but that Gatan failed to issue a notice to

9   affected customers.  Id. at ¶ 67.  Relators argue that that failure to notify is an indication

10  of the intentional nature of the alleged fraud.

11        The third requirement of Relators' FCA claim requires that the fraudulent

12  statement or conduct was material to the government's decision to pay for the products.

13  Ebeid, 616 F.3d at 997.  A false statement "must be material to the government's

14  decision to pay out moneys to the claimant."  Hendow, 461 F.3d at 1172.  "[T]he relevant

15  certification of compliance must both be a 'prerequisite to obtaining a government

16  benefit,' ... and a 'sine qua non of receipt of [government] funding.'"  Id. (quoting

17  Hopper, 91 F.3d at 1266–67).  Here, where Relators assert an FCA claim under the

18  implied theory of false certification, it will be sufficient for Relators to allege facts showing

19  that false certifications "previously undertaken" by Gatan were essential to the

20  government's decision to purchase its products.  Ebeid, 616 F.3d at 998.

21        The statutes regulating radiation-emitting products, 21 C.F.R. § 1020, and

22  exposure limits to those products, 10 C.F.R. § 20.1302, do not expressly condition

23  payment upon compliance.  However, the lack of an express condition for payment is not

24  dispositive of materiality.  See Hendow, 461 F.3d at 1177 ("An explicit statement,

25  however, is not necessary to make a statutory requirement a condition of payment, and

26  we have never held as much.").  Taking Relator's assertions as true, Gatan failed to

27  comply with the FDA and NRC regulations and made false assertions that they were

28  exempt from these regulations.  Had the government purchasers known that Gatan was

1   required to comply with such regulations, and that Gatan's failure to comply created a

2   danger to government workers, then there is sufficient reason to believe that the

3   government would not have chosen to purchase Gatan's products.  As such, Relators

4   have met their burden with regard to the materiality element.  See Hendow, 461 F.3d at

5   1173 ("[T]he question is merely whether the false certification—or assertion, or

6   statement—was relevant to the government's decision to confer a benefit.").

7           Similarly, Relators provide sufficient detail for the fourth element of their FCA

8   claim: that there was an actual "claim paid or approved by the government."  Hendow,

9   461 F.3d at 1173 (citing 31 U.S.C. § 3729(a)(2)).  A claim is construed broadly and

10  "arises whenever the government is asked to pay out money or to forfeit moneys due."

11  Id. (internal citation and quotation marks omitted).  Relators aver, and Defendants do not

12  dispute, that Gatan sells its products to multiple state and federal agencies and even

13  provides specific examples of equipment sold to three universities that receive federal

14  funding.  Compl. at ¶¶ 63-65.  Accordingly, Relators allege with sufficient particularity

15  that claims were actually made.

16          Based on the foregoing, Relators have properly presented claims for FCA liability

17  under 31 U.S.C. § 3729(a)(1)(A) and (B) by alleging with particularity that Gatan

18  submitted a false claim and made false statements that were material to such a claim.

19  Accordingly, Defendants' Motion for Judgment on the Pleadings is DENIED for Relators'

20  first, second, fourth, fifth, and seventh causes of action.[7]

21          **B.      Roper's Liability for its Wholly-Owned Subsidiary Gatan**

22          Finally, Defendants argue that Relators have not pled sufficient facts to hold

23  Roper liable for its subsidiary Gatan.  The Court agrees.

24          A parent company is "presumed to have an existence separate from its

25  subsidiaries."  U.S. ex rel. Pecanic v. Sumitomo Elec. Interconnect Products, Inc.,

26  No. 12-cv-0602, 2013 WL 774177, at *5 (S.D. Cal. Feb. 28, 2013) (citing Neilson v.

27          [7] Relators argued that Defendants waived the right to a Rule 9(b) motion by filing a detailed
    answer to Relators' Complaint.  ECF No. 61 at 19.  The Court disagrees.  Because Defendants' motion is
28  early enough not to delay trial, it is deemed proper and timely.  Fed. R. Civ. P. 12(c).

Union Bank of Cal., 290 F. Supp.2d 1101, 1116 (C.D. Cal. 2003)). To properly allege FCA liability against Roper, Relators must sufficiently demonstrate in their complaint that Roper is liable under an alter ego theory or that Roper is directly liable for its own role in the alleged FCA violations. Id. Relators' Complaint fails to make the proper allegations to pierce the corporate veil, and, instead, merely alleges that Gatan is a wholly-owned subsidiary of Roper. Without more, Relators' allegations are insufficient. See Katzir's Floor and Home Design, Inc. v. M–MLS.com, 394 F.3d 1143, 1149 (9th Cir. 2004) (citing Dole Food Co. v. Patrickson, 538 U.S. 468, 475 (2003)) ("The mere fact of sole ownership and control does not eviscerate the separate corporate identity that is the foundation of corporate law."). Accordingly, Defendants' Motion for Judgment on the Pleadings is GRANTED, without prejudice, with regard to claims against Roper.

**CONCLUSION**

As set forth above, Defendants' Motion for Judgment on the Pleading (ECF No. 56) is DENIED for Relators' first, second, fourth, fifth, and seventh causes of action, and GRANTED, without prejudice, for Relators' third and sixth causes of action for conspiracy. Defendants' Motion for Judgment on the Pleadings is GRANTED, without prejudice, with regard to claims against Roper. Defendants' Motion to Strike is DENIED. Relators may file a First Amended Complaint, should they choose to do so, not later than twenty (20) days after the date this Memorandum and Order is electronically filed.

IT IS SO ORDERED.

Dated: March 20, 2015

MORRISON C. ENGLAND, JR., CHIEF JUDGE
UNITED STATES DISTRICT COURT

12