UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA, and
STATE OF CALIFORNIA, ex rel.
BRENT BAILEY and EMILY WADE,

Relators,

v.

GATAN, INC., ROPER INDUSTRIES,
INC. and DOES 1 through 100,
Inclusive,

Defendants.

No. 2:12-cv-00106-MCE-CKD

**MEMORANDUM AND ORDER**

Through the present action, Relators Brent Bailey and Emily Wade (collectively "Relators")[1] sue Gatan, Inc. ("Gatan") and its parent corporation, Roper Industries ("Roper") (collectively "Defendants"), under the False Claims Act, 31 U.S.C. § 3729, et seq. ("FCA") and its California counterpart, Government Code § 3729, et seq. ("CFCA"). This lawsuit was originally filed under seal on January 13, 2012, pursuant to the qui tam provisions of the FCA and CFCA.

Relators allege five claims against Defendants under both the FCA and CFCA. First Amended Complaint ("FAC"), ECF No. 70. The claims can be summarized as

---

[1] On March 29, 2013, the unidentified Relator "Richard Roe" was voluntarily dismissed. ECF No. 15.

1

follows: (1) that Gatan knowingly presented, or caused to be presented, a false or fraudulent claim (first and fourth claims); (2) that Gatan knowingly made, used, or caused to be made or used, a false record or statement material to a false or fraudulent claim (second and fifth claims); (3) that Gatan conspired to defraud the United States and the state of California by getting a false or fraudulent claim allowed or paid (third and sixth claims); and (4) that Gatan failed to disclose a false claim within reasonable time (seventh claim).  Id.

Presently before the Court is Defendants' Motion for Summary Judgment. Relators have failed to oppose the motion.  As set forth below, Defendants' motion is GRANTED.[2]

## BACKGROUND

Relators are former employees of Gatan, which is a wholly-owned subsidiary of Roper.  FAC at ¶¶ 8-11.  Gatan is a leading manufacturer of instrumentation and software that enhance the performance of electron microscopes.  Id. at ¶ 19.  Relators allege that Defendants made false or fraudulent claims in the sale of equipment and accessories that cause potentially unsafe and hazardous X-ray radiation leaks.  Id. at ¶ 1.  Specifically, Relators claim that Gatan fails to advise its customers that the allegedly defective products put them at risk of being exposed to radiation in excess of the limits proscribed by the Nuclear Regulatory Commission and the Federal Drug Administration ("FDA").  Id. at ¶¶ 3-4.  Relators also allege that Gatan falsely claims to all its employees and customers that its products are exempt from compliance with FDA regulations.  Id. at ¶ 3.  Additionally, Relators aver that, as a result of Gatan's concealment and misrepresentations, its customers fail to classify their employees as radiation workers despite the radiation risks associated with the equipment.  Id. at ¶ 5.

---

[2] Having determined that oral argument would not be of material assistance, the Court ordered this matter submitted on the briefs in accordance with E.D. Cal. Local Rule 230(g).

2

Finally, Relators allege that Gatan regularly failed to test the radiation emissions of their products before shipping to its customers. Id. at ¶ 45. Relators contend that the adversely-affected customers include the United States, California, and entities that receive funding from the United States and California. Id. at ¶ 48. Consequently, Relators argue that these allegations show that Defendants knowingly made false and misleading claims to its customers, in violation of the FCA and CFCA.

Relators filed the instant lawsuit under seal on January 13, 2012. On March 22, 2013, after conducting an investigation of Relators' claims, the United States and the State of California each declined to intervene in this matter, and on March 28, 2013, Relators' complaint was unsealed. After a motion for judgment on the pleadings resulted in a dismissal of certain claims, Relators filed their operative pleading, the FAC, on April 19, 2015. Defendants thereafter filed their answer to the FAC on April 27, 2015.

In the meantime, discovery had long been underway. The Court's initial Pretrial Scheduling Order, filed August 28, 2013, called for the completion of fact discovery by May 16, 2014. On March 25, 2014, just two months before discovery was scheduled to close, Relators moved to continue the discovery cutoff, which was continued by Order filed April 29, 2014. Subsequently, an Amended Pretrial Scheduling Order was issued on May 28, 2014 continuing discovery until October 31, 2014.

On September 30, 2015, pursuant to a stipulation for continuing discovery cutoff, the then-operative scheduling order was again vacated. Following adjudication of Defendants' motion for judgment on the pleadings, a Second Amended Pretrial Scheduling Order was issued, this time continuing discovery until January 22, 2016. On December 10, 2015, Relators moved for a third continuance of discovery, and over Defendants' objections that motion was granted, with a Third Amended Pretrial Scheduling Order continuing the applicable discovery cutoff to August 22, 2016.

According to Defendants, at the time discovery finally closed on August 22, 2016 Relators had failed to take a single deposition, and had not, since 2014, served a single discovery request. Defs.' Mot., 1: 24-26, 7:20-23; Kahn Decl., ECF No. 163-6, ¶ 2.

Since the Third Amended Scheduling Order required that all dispositive motions be heard by February 23, 2017, Defendants filed the Motion for Summary Judgment now before the Court on October 20, 2016. That motion was ultimately scheduled for hearing on January 26, 2017 before being taken under submission.

In requesting summary judgment, Defendants allege that Relators have failed to adduce any evidence to support any viable claim under either the FCA or the CFCA. They first point to the fact that Gatan's imaging products do not themselves emit any x-ray radiation whatsoever. Defs.' Statement of Undisputed Facts ("SUF") at No. 1. Instead, its products are designed to pair with electron microscopes that are made not by Gatan but by third parties. Webster Decl., ECF No. 185, ¶ 6. It is the microscopes that operate by emitting a beam of electrons, and in doing so they emanate some radiation whether or not they are configured with Gatan's products. SUF at No. 7.

In addition, according to Defendants, while the FDA has promulgated various x-ray emission standards, none of those standards are applicable to either electron microscopes or to the accessories Gatan makes for them. See 21 C.F.R. § 1020.40 ("The provisions of this section are not applicable to . . . electron microscope equipment . . . "); SUF No. 3. Nevertheless, according to Gatan, in installing its imaging products, it nonetheless applies its own internal emissions standard designed to minimize x-ray emissions from its customer's electron microscopes while configured with Gatan products. Webster Decl, ¶ 10; Gubbens Decl., ECF No. 163-4, ¶ 4. Through this internal standard, Gatan strives to ensure that its products while paired with microscopes do not emit more than one microsievert of radiation per hour. SUF at No. 4. That emission standard is modeled after the German PTB emission standard, which Defendants describe as the most rigorous governmental x-ray emission standard in the world. Id. at No. 17.

Defendants' motion details Gatan's procedures in testing whether a customer's electron microscopes, as configured with Gatan products, meet this internal standard. If the testing, as performed by Gatan in the installation process, meets the internal

4

1 standard, the configuration is released and permitted for use at customer sites after the
2 customer signs an installation report. Id. at 32-33. If the product does not meet
3 standards, it is removed and modified until such time as the internal standard is met. Id.
4 at No. 8. While occasionally a product is released for use before this process has been
5 completed, that release will not be permitted unless the customer signs a disclaimer that
6 x-ray emissions from the configuration could exceed the internal standard. Id. at ¶ 38,
7 Gubbens Decl., ¶ 5.

According to Defendants, given this process Relators cannot establish on the most fundamental level that Gatan's products are either unsafe or that Gatan conceals information as to safety from its customers.

Relators failed to file any opposition to Defendants' motion. Instead, they have only filed an Application under Federal Rule of Civil Procedure 56(d) that Defendants' motion be either continued or denied outright because Relators have not been able to complete discovery necessary to oppose the motion, and because several discovery-related motions made by Relators remain pending.

## STANDARD

The Federal Rules of Civil Procedure[3] provide for summary judgment when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). One of the principal purposes of Rule 56 is to dispose of factually unsupported claims or defenses. Celotex, 477 U.S. at 325.

In a summary judgment motion, the moving party always bears the initial responsibility of informing the court of the basis for the motion and identifying the portions in the record "which it believes demonstrate the absence of a genuine issue of

---

[3] All further references to "Rule" or "Rules" are to the Federal Rules of Civil Procedure unless otherwise noted.

material fact." Celotex, 477 U.S. at 323. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. 253, 288-89 (1968).

In attempting to establish the existence or non-existence of a genuine factual dispute, the party must support its assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits[,] or declarations . . . or other materials; or showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 251-52 (1986); Owens v. Local No. 169, Assoc. of W. Pulp and Paper Workers, 971 F.2d 347, 355 (9th Cir. 1987). The opposing party must also demonstrate that the dispute about a material fact "is 'genuine,' that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248. In other words, the judge needs to answer the preliminary question before the evidence is left to the jury of "not whether there is literally no evidence, but whether there is any upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 251 (quoting Improvement Co. v. Munson, 81 U.S. 442, 448 (1871)) (emphasis in original). As the Supreme Court explained, "[w]hen the moving party has carried its burden under Rule [56(a)], its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586. Therefore, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Id. 87.

///

In resolving a summary judgment motion, the evidence of the opposing party is to be believed, and all reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. Anderson, 477 U.S. at 255. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898 (9th Cir. 1987).

## ANALYSIS

As the United States Supreme Court has noted, "[t]he False Claims Act is not an all-purpose antifraud statute or a vehicle for punishing garden-variety breaches of contract or regulatory violations." Universal Health Services, Inc. v. United States ex rel. Escobar, 136 S. Ct. 1989, 2003 (2016) (internal citation omitted). "[S]trict enforcement" of each element of the FCA is thus required to prevent it from becoming a statute of "open ended liability." Id. at 2002. Consequently, as Defendants correctly point out, in order to survive a motion for summary judgment and proceed to trial on their FCA claims, Relators must provide evidence that Gatan "'knowingly present[ed], or cause[d] to be presented, to an officer or employee of the United States Government . . . a false or fraudulent claim for payment or approval', or 'knowingly ma[de], use[d], or cause[d] to be made or used a false record or statement to get a false or fraudulent claim paid or approved by the Government.'" See United States ex rel. Hochman v. Nackman, 145 F.3d 1069, 1073 (9th Cir. 1998) (quoting 31 U.S.C. § 3729(a)(1-2) (1994)). Relators must also identify sufficient evidence that the alleged false representations were "material" to the payment of government funds and that Gatan knew they were material. See Escobar, 136 S. Ct. at 2002-04.[4]

---

[4] While Relators also brings claims under the CFCA, this Court has previously noted that courts rely on FCA precedent in interpreting the CFCA. See ECF No. 69, pp. 5-6.

Turning first to whether a material false or fraudulent claim was made, Defendants argue that there is no evidence that they did not comply with pertinent x-rays emissions regulations and standards. As enumerated above, there are no legally binding standards applicable to electron microscope equipment; instead Gatan elected to adhere to a rigorous internal standard of its own. Moreover, according to Defendants, there is also no evidence that compliance with any regulation or standard, to the extent it did bind Gatan, was "material" to a specific government customer's payment of a Gatan invoice, as necessary to incur FCA liability. As the Supreme Court noted in Escobar, this materiality requirement is a "rigorous" and "demanding" element of an FCA claim. In order to establish materiality, it must be established, by affirmative evidence, that a reasonable person would attach importance to compliance in deciding to pay a claim. Escobar, 136 S. Ct. at 2002-04. Additionally, in the absence of specific false claims made to specific government customers, summary judgment is appropriate. See id. at 2004 n. 6.

Gatan first asserts that no one acting on its behalf ever made a false statement about x-rays emissions, or compliance with emissions standards or regulations, to any customer paying with federal or California funds. SUF No. 19. Even if one assumes for arguments sake that such misrepresentations were made, Defendants go on to contend that there is "absolutely no evidence of materiality" in any event, since Relators have not shown that compliance with any standard, whether externally imposed or internally driven, was material to any government customer. Indeed, the only individual customer identified in the FAC, Professor David Agard of the University of California, San Francisco, has submitted a declaration where he states under oath that Gatan never promised him that its products would comply with a particular standard or regulation. Agard Decl., ECF No. 163-7, ¶ 6.[5] Therefore, according to Defendants, there is no evidence of a specific misrepresentation at all, let alone a material one for

---

[5] Gatan has also submitted evidence that its invoices include no representations about x-ray emissions, or any other regulation or standard related to such emissions. SUF at No. 12.

purposes of FCA liability.[6]  Moreover, as also required for FCA liability, Defendants further assert that there is no evidence that Gatan "knowingly" made any false claim.

Given this lack of evidence, Defendants assert that Relators cannot show, as they must, that Gatan made a false misrepresentation in seeking payment from government funds, that the misrepresented information was material to whether payment would have been made, and that Gatan knowingly submitted a false claim.  See 31 U.S.C. § 3729(a)(1).[7]

Having pointed out these evidentiary shortcomings, Defendants correctly assert that they have made an initial showing that they are entitled to summary adjudication of their FCA claims.  Having made that showing, the burden shifts to Relators to show there are genuine issues of fact which preclude summary judgment.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. at 586-87 (1986); First Nat'l Bank v. Cities Serv. Co., 391 U.S. at 288-89.

In failing to file any opposition to Defendants' motion whatsoever, Relators have failed to meet that burden.  All Defendants have submitted a request that Defendants' motion be continued, or denied outright, pursuant to Rule 56(d).  Rule 56 permits a court to allow additional discovery, and to refrain from considering a summary judgment motion in the meantime, where the opposing part shows, by affidavit or declaration, specific reasons why it cannot currently present facts essential in opposing the motion.  Fed. R. Civ. P. 56(d).  Relators argue that they should not only be permitted "to obtain unfinished discovery that is needed for their opposition to summary judgment" (Relators' App., ECF No. 178, 6:27-28), but that Relators' pending discovery-related motions must also be ruled upon before summary judgment is considered.

---

[6] According to Defendants, this is not surprising since Gatan's customers tend to be sophisticated research institutions that are well aware of the potential for x-ray emissions from their configured electron microscopes and commonly have their own staff and procedures for monitoring x-ray exposure. Those institutions therefore do not consider Gatan's compliance with emissions regulations and standards to be material to their purchasing decisions.  See Gubbens Decl., ¶ 7; Agard Decl. ¶¶ 6, 8; Minor Decl., ¶¶ 11-12, 15.

[7] Gatan also asserts that for any particular sale, it has no first-hand knowledge of the actual sources of the funds in any event, whether from governmental sources or otherwise.  See SUF 22.

Turning first to the latter contention, all pending discovery-related motions have been ruled upon and denied.  See ECF Nos. 180, 197, 200.  That leaves the issue of whether Relators can show, for purposes of Rule 56(d), that they should now in any event be permitted to engage in additional discovery necessary to oppose Defendants' motion.

Relators' request fails on numerous levels.  First, Relators cannot credibly argue that Defendants' motion was premature, having been filed on October 20, 2016, nearly two months after discovery closed and just over four months before any such motion had to be heard by this Court.  Second, "[a] motion under Rule 56(d) should be made before the close of discovery." Miyares v. City of New York, No. 11 Civ. 4297 (RJS), 2013 WL 3940816 at *2 n.3 (S.D.N.Y. July 31, 2013 ) (denying Rule 56(d) filed after close of discovery).[8]  As Defendants point out in their Reply, a legion of authorities hold that motions made after that point are time barred.  Defs.' Reply, 5:4-10.  Here, because discovery closed on August 22, 2016, in moving to permit more discovery on November 9, 2016, nearly three months later, Relators' request is unquestionably tardy.

Even if Relators' request were timely, however, the Court must still consider, in order to justify relief under Rule 56(d), whether Relators were "diligent" and whether they had "sufficient opportunity to conduct discovery." Martinez v. Columbia Sportswear USA Corp., 553 Fed. App'x 760, 761 (9th Cir. 2002) (affirming denial of Rule 56(d) request made by party that failed to diligently pursue discovery).  If Relators were not diligent, then their request must be denied.  See Pfingston v. Ronan Engineering Co., 284 F.3d 999, 1005 (9th Cir. 2002) ("The failure to conduct discovery diligently is grounds for the denial of a Rule 56(d) motion.").

Here, as this Court's denials of Relators' discovery motions already suggests, Relators have not been diligent in pursuing discovery.  Relators waited until the last minute to file their motion to compel further discovery, having otherwise propounded no

---

[8] To the extent that Relators' Ex Parte Application for Leave to Notice Hearing on Relators' Renewed Motion to Compel (ECF No. 137), filed August 21, 2017, can be deemed a request for more discovery, that request has already been denied.  ECF No. 180.

1 | discovery requests since 2015, and having taken no depositions whatsoever, even
2 | though this matter has been pending since 2012. Relators cannot credibly assert that
3 | they have been diligent in pursuing discovery under those circumstances. They had
4 | more than three years to conduct discovery and have largely failed to do so despite the
5 | fact that the deadline for completing discovery was continued three times.
6 |       Moreover, even if Relators had been diligent, they must still state by way of
7 | affidavit the "specific facts that they hope to elicit from further discovery." Herrera v.
8 | Statti, No. 2:10-cv-1154 MCE, 2015 WL 8481837 at *1 (E.D. Cal. Dec. 10, 2015); see
9 | also E.D. Cal. Local Rule 260 ("If a need for discovery is asserted as a basis for denial of
10 | the motion, the party opposing the motion shall provide a specification of the particular
11 | facts on which discovery is to be had or the issues on which discovery is necessary.");
12 | Blue Lake Rancheria v. Lanier, 106 F. Supp. 3d 1134, 1137 (E.D. Cal. 2015) (rejecting
13 | Rule 56(d) request for failure to identify "specific facts".). Here, as Defendants correctly
14 | point out, Relators' application under Rule 56(d) simply lists the discovery requests they
15 | consider incomplete. See Relators' App., pp. 2-4. There is no indication as to what, if
16 | anything, Relators believe that discovery will show.
17 |       Finally, aside from enumerating two pages of discovery items that they contend
18 | are incomplete, Relators provide no explanation beyond mere conclusion as to why that
19 | discovery is "essential" to oppose Defendants' summary judgment motion. In order to
20 | justify relief under Rule 56(d), Relators must do more than offer just "speculative
21 | assertions that future discovery would influence the outcome of the pending summary
22 | judgment motion." Williams v. Techtronic Industries of North America, Inc.,
23 | 600 Fed. App'x 1, 1-2 (1st Cir. 2015) (affirming denial of Rule 56(d) request)
24 |       For all these reasons Relators' application under Rule 56(d) fails. Given that
25 | failure, the Court finds that Relators have not met their burden in rebutting Defendants'
26 | showing that summary judgment here is proper.
27 | ///
28 | ///

**CONCLUSION**

For all of the foregoing reasons, Defendants' Motion for Summary Judgment (ECF No. 163) is GRANTED in its entirety. The Clerk of Court is accordingly directed to enter judgment in Defendants' favor and to close the file.

IT IS SO ORDERED.

Dated: November 27, 2017

MORRISON C. ENGLAND, JR
UNITED STATES DISTRICT JUDGE